HERNANDEZ *v.* KELLY, WARDEN.

[Cite as *Hernandez v. Kelly,* 108 Ohio St.3d 395, 2006-Ohio-126.]

(No. 2005–2258—Submitted January 11, 2006—Decided January 12, 2006.)

**Per Curiam.**

{¶ 1} This is an action for a writ of habeas corpus to compel the release of a petitioner who is in prison for violating the terms of postrelease control imposed by the Ohio Adult Parole Authority ("APA"), when he was not notified at his sentencing .hearing that he would be subject to postrelease control and the postrelease control was not incorporated into the trial court's sentencing entry.

### The First Conviction

{¶ 2} In 1998, the Cuyahoga County Court of Common Pleas convicted petitioner, Henry Hernandez, upon a jury verdict finding Hernandez guilty of possession of cocaine in an amount exceeding 1,000 grams and conspiracy to possess cocaine, and accompanying specifications. The common pleas court sentenced Hernandez to an aggregate prison term of 19 years. The court advised Hernandez at his sentencing hearing that he was "being sent to prison and placed on post-release control by the Parole Board for a period of up to five years." This notification was erroneous because under R.C. 2967.28(B)(1), his offense warranted a mandatory postrelease control period of five years, not "up to" five years. The court also failed to incorporate its imposition of postrelease control into its sentencing entry.

### Appeal of First Conviction and Remand

{¶ 3} On appeal, the Court of Appeals for Cuyahoga County reversed the judgment of conviction on the cocaine possession and conspiracy charges, as well as the specifications, and remanded the cause to the trial court for further proceedings. *State v. Hernandez* (Feb. 24, 2000), Cuyahoga App. No. 74757, 2000 WL 218384.

{¶ 4} On remand, at an August 9, 2000 hearing, Hernandez pleaded guilty to an amended charge of possession of cocaine in an amount exceeding 500 grams but not exceeding 1,000 grams in violation of R.C. 2925.11, a felony of the first degree. The prosecutor and defense counsel had agreed that, in exchange for Hernandez's guilty plea, the state would dismiss the remaining charge and specifications. The common pleas court accepted the plea agreement, convicted Hernandez, and sentenced him to a prison term of seven years. At his sentencing, the common pleas court did not notify Hernandez that he would be subject to postrelease control. In addition, the common pleas court did not incorporate a period of postrelease control in its journal entries imposing sentence.

## Action of the Adult Parole Authority

{¶ 5} On February 7, 2005, Hernandez completed his seven-year sentence and was released from prison and placed on postrelease control for five years by the Adult Parole Authority.

{¶ 6} In June 2005, Hernandez was detained by Texas State Troopers after a car in which he was a passenger was stopped for speeding and approximately $18,000 was found inside the car. The Adult Parole Authority conducted a hearing and determined that Hernandez had violated several conditions of his postrelease control. In October 2005, the APA imposed a prison sentence of 160 days, with continued APA supervision upon his release.

{¶ 7} On December 1, 2005, Hernandez filed this action for a writ of habeas corpus to compel respondent, Lorain Correctional Institution Warden Bennie Kelly, to release him from prison and from any further postrelease control.

{¶ 8} This cause is now before us for a consideration of the merits.

## Habeas Corpus

{¶ 9} "A writ of habeas corpus is warranted in certain extraordinary circumstances 'where there is an unlawful restraint of a person's liberty and there is no adequate remedy in the ordinary course of law.'" *Johnson v. Timmerman–Cooper* (2001), 93 Ohio St.3d 614, 616, 757 N.E.2d 1153, quoting *Pegan v. Crawmer* (1996), 76 Ohio St.3d 97, 99, 666 N.E.2d 1091.

{¶ 10} Hernandez asserts that he is entitled to be released from prison and from any further postrelease control because the trial court did not notify him at his sentencing hearing that he would be subject to postrelease control and did not incorporate postrelease control into its sentencing entry.

{¶ 11} In general, "[s]entencing errors by a court that had proper jurisdiction cannot be remedied by extraordinary writ," because the petitioner "has or had adequate remedies in the ordinary course of law, e.g., appeal and postconviction

relief, for review of any alleged sentencing error." *State ex rel. Jaffal v. Calabrese,* 105 Ohio St.3d 440, 2005-Ohio-2591, 828 N.E.2d 107.

{¶ 12} This precedent is inapposite, however, because Hernandez is not challenging his sentencing entry. He is instead challenging the Adult Parole Authority's decision—not a court's decision—to place him on postrelease control and the APA's subsequent decision to sanction him for violating the terms of that control. Habeas corpus will lie to challenge certain decisions of the Adult Parole Authority because there is no remedy of appeal available. See *State ex rel. Jackson v. McFaul* (1995), 73 Ohio St.3d 185, 187, 652 N.E.2d 746.

{¶ 13} Therefore, Hernandez's petition states a potentially viable habeas corpus claim.

## Postrelease Control: Failure to Notify Offender

{¶ 14} "[I]n order to properly impose sentence in a felony case, a trial court must consider and analyze numerous sections of the Revised Code to determine applicability and must provide notice to offenders at the sentencing hearing and incorporate that notice into its journal entry." *State v. Jordan,* 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 9.

{¶ 15} More pertinently, "[w]hen sentencing a felony offender to a term of imprisonment, a trial court is required to notify the offender at the sentencing hearing about postrelease control and is further required to incorporate that notice into its journal entry imposing sentence." Id. at paragraph one of the syllabus.

{¶ 16} The trial court in Hernandez's case committed error because it did not notify him at his sentencing hearing that he would be subject to mandatory postrelease control and did not incorporate postrelease control into its sentencing entry. Warden Kelly argues that notwithstanding this error, the Adult Parole Authority was authorized to impose postrelease control on Hernandez because its authority and duty to do so emanate from R.C. 2967.28.

{¶ 17} Under R.C. 2967.28(B), each sentence imposing a prison term for certain offenses—including first-degree felonies—"shall include a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment." The period of postrelease control for first-degree felonies is five years. R.C. 2967.28(B)(1). "If a postrelease control sanction is imposed upon an offender under [R.C. 2967.28], the offender upon release from imprisonment shall be under the general jurisdiction of the adult parole authority * * *." R.C. 2967.28(F)(1).

{¶ 18} Notwithstanding Warden Kelly's argument to the contrary, nothing in R.C. 2967.28 authorizes the Adult Parole Authority to exercise its postrelease-control authority if postrelease control is not imposed by the *trial court* in its

sentence. See, e.g., R.C. 2929.14(F) ("If *a court* imposes a prison term of a type described in division (B) of section 2967.28 of the Revised Code, *it* shall include in the sentence a requirement that the offender be subject to a period of post-release control after the offender's release from imprisonment, in accordance with that division" [emphasis added]); *Woods v. Telb* (2000), 89 Ohio St.3d 504, 512, 733 N.E.2d 1103 ("post-release control is part of the original *judicially* imposed sentence" [emphasis added]). Here the trial court failed to comply with its clear duty to advise Hernandez of the statutorily required postrelease control.

{¶ 19} As we observed in *Jordan,* 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 19, this construction avoids any potential separation-of-powers problem:

{¶ 20} "In *Woods v. Telb,* 89 Ohio St.3d 504, 733 N.E.2d 1103, we detailed the constitutional significance of a trial court including postrelease control in its sentence. We stated that because the separation-of-powers doctrine precludes the executive branch of government from impeding the judiciary's ability to impose a sentence, the problem of having the Adult Parole Authority impose postrelease control at its discretion is remedied by a trial court incorporating postrelease control into its original sentence. Id. at 512–513, 733 N.E.2d 1103. *Consequently, unless a trial court includes postrelease control in its sentence, the Adult Parole Authority is without authority to impose it.*" (Emphasis added.)

{¶ 21} Warden Kelly further contends that *Jordan* and *Woods* do not apply in this case, because Hernandez was subject to mandatory postrelease control and *Jordan* and *Woods* should be limited to discretionary postrelease control.

{¶ 22} Kelly's contention lacks merit because one of the consolidated cases in *Jordan* involved mandatory postrelease control imposed under R.C. 2967.28(B). Id. at ¶ 2. We expressly determined that "the distinction between discretionary and mandatory postrelease control is one without a difference with regard to the duty of the trial court to notify the offender at the sentencing hearing and to incorporate postrelease control notification into its journal entry." Id. at ¶ 22.

{¶ 23} Nor is there merit in Kelly's additional assertion that *Jordan* should not be retroactively applied to cases like this in which the conviction became final before the court's decision in *Jordan.* Cf., e.g., *Jimison v. Wilson,* 106 Ohio St.3d 342, 2005-Ohio-5143, 835 N.E.2d 34, ¶ 12, quoting *Ali v. State,* 104 Ohio St.3d 328, 2004-Ohio-6592, 819 N.E.2d 687, ¶ 6–7 (" 'A new judicial ruling may be applied only to cases that are pending on the announcement date. * * * The new judicial ruling may not be applied retroactively to a conviction that has become final, i.e., where the accused has exhausted all of his appellate reme-dies' ").

{¶ 24} There is no retroactivity problem here because we did not announce a new rule of law in *Jordan. Jordan* reaffirmed our holding in *Woods,* which preceded the sentencing entry here. Further, in *Jordan,* we merely determined what the applicable statutes, e.g., R.C. 2929.14(F) and 2967.28, have meant since their enactment. *Jordan,* 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 21 ("The plain language of R.C. 2929.14(F) and 2967.28 evinces the intent of the General Assembly not only to make all incarcerated felons subject to mandatory or discretionary postrelease control but also to require all sentencing trial courts in this state to include postrelease control as part of the sentence for every incarcerated offender").

{¶ 25} In *Agee v. Russell* (2001), 92 Ohio St.3d 540, 543, 751 N.E.2d 1043, a habeas corpus case, we similarly held that "there is no retroactivity issue here because we did not announce a new rule of law in [*State v.*] *Hanning* [ (2000), 89 Ohio St.3d 86, 728 N.E.2d 1059]. Instead, we merely determined what R.C. 2151.26 has meant since its enactment." See, also, *Bousley v. United States* (1998), 523 U.S. 614, 619–620, 118 S.Ct. 1604, 140 L.Ed.2d 828 (general rule precluding retroactive application of new constitutional rules of criminal proce-dure to cases that have become final before the new rules are announced is inapplicable to cases in which the United States Supreme Court decides the meaning of a criminal statute enacted by Congress); *Fiore v. White* (2001), 531 U.S. 225, 227–229, 121 S.Ct. 712, 148 L.Ed.2d 629 (state supreme court's interpretation of state statute clarified meaning of statute and was thus not new law so that case presented no issue of retroactivity); cf. *State v. Webb* (1994), 70 Ohio St.3d 325, 331, 638 N.E.2d 1023, quoting *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 129 N.E.2d 467 ("A decision of this court overruling a former decision 'is retrospective in its operation, and the effect is not that the former [decision] was bad law, but that it never was the law' ").

{¶ 26} Moreover, unlike in *Jimison* and *Ali,* the entry in this case did not even mention the sanction Hernandez is now challenging. See *Jimison,* 106 Ohio St.3d 342, 2005-Ohio-5143, 835 N.E.2d 34; *Ali,* 104 Ohio St.3d 328, 2004-Ohio-6592, 819 N.E.2d 687. Thus, the interest in finality that underlies the rule precluding retroactive application of a new judicial ruling actually favors Hernan-dez because he is simply asking that his 2000 sentencing entry—which says nothing about postrelease control—be enforced as written. If anything, it is the government that now seeks to upset the finality of the trial court's order.

{¶ 27} Therefore, in accordance with our holdings in *Jordan* and *Woods,* we hold that the Adult Parole Authority lacked authority to impose postrelease control on Hernandez.

### Remedy

{¶ 28} Citing *Jordan,* 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, Warden Kelly contends that the appropriate remedy for any error by the trial

court in not notifying Hernandez of postrelease control and in failing to incorporate postrelease control into its sentencing entry is resentencing, and not a writ of habeas corpus releasing Hernandez from prison and further postrelease control. *Jordan* notwithstanding, an after-the-fact notification of Hernandez, who has served his seven-year sentence, would circumvent the objective behind R.C. 2929.14(F) and 2967.28 to notify defendants of the imposition of postrelease control at the time of their sentencing. We noted in a related context that imposing a new prison term is not an option:

{¶ 29} "When a trial court makes an error in sentencing a defendant, the usual procedure is for an appellate court to remand to the trial court for resentencing. In community control sentencing cases in which the trial court failed to comply with [the statutory notice requirement], however, a straight remand can cause problems. Due to the particular nature of community control, any error in notification cannot be rectified by 'renotifying' the offender. When an offender violates community control conditions and that offender was not properly notified of the specific term that would be imposed, an after-the-fact reimposition of community control would totally frustrate the purpose behind [statutory] notification, which is to make the offender aware *before a violation* of the specific prison term that he or she will face for a violation. Consequently, *where no such notification was supplied,* and the offender then appeals after a prison term is imposed under R.C. 2929.15(B), the matter must be remanded to the trial court for a resentencing under that provision with *a prison term not an option.* In this case, since the prison term has already been served, there will be no remand for resentencing." (Emphasis added in part, and footnote and citations omitted.) *State v. Brooks,* 103 Ohio St.3d 134, 2004-Ohio-4746, 814 N.E.2d 837, ¶ 33.

{¶ 30} It is axiomatic that "[a] court of record speaks only through its journal entries." *State ex rel. Geauga Cty. Bd. of Commrs. v. Milligan,* 100 Ohio St.3d 366, 2003-Ohio-6608, 800 N.E.2d 361, ¶ 20; *Kaine v. Marion Prison Warden* (2000), 88 Ohio St.3d 454, 455, 727 N.E.2d 907 (noting this axiom in a habeas corpus case). Here, the trial court's sentencing entry specified only Hernandez's seven-year sentence, which he completed in February 2005. Because his only journalized sentence has now expired, habeas corpus is an appropriate remedy. See *Morgan v. Ohio Adult Parole Auth.* (1994), 68 Ohio St.3d 344, 346, 626 N.E.2d 939 ("habeas corpus is available where an individual's maximum sentence has expired and he is being held unlawfully"); *Heddleston v. Mack* (1998), 84 Ohio St.3d 213, 214, 702 N.E.2d 1198.

## Conclusion

{¶ 31} When the General Assembly adopted Am.Sub.S.B. No. 2, in 1996, it created major changes in the premise of felony sentencing in Ohio. 146 Ohio Laws, Part IV, 7136. As part of the General Assembly's goal of achieving "truth

in sentencing," the new felony-sentencing law was intended to ensure that all persons with an interest in a sentencing decision would know precisely the sentence a defendant is to receive upon conviction for committing a felony. The goal is that when the prosecutor, the defendant, and victims leave the courtroom following a sentencing hearing, they know precisely the nature and duration of the restrictions that have been imposed by the trial court on the defendant's personal liberty. Confidence in and respect for the criminal-justice system flow from a belief that courts and officers of the courts perform their duties pursuant to established law. In this case, neither the trial judge, the prosecutor, nor the defense counsel advised the defendant at the hearing, or in a journal entry, that his liberty would continue to be restrained after he served his sentence. That omission violated not only the statute, but the spirit of the changes in criminal sentencing underlying Senate Bill 2.

{¶ 32}· The Adult Parole Authority was not authorized to put Hernandez on postrelease control and sanction him for violating the terms of that control in the absence of appropriate notification of postrelease control by the trial court and incorporation of postrelease control in its sentencing entry. In that his journalized sentence has expired, Hernandez is entitled to the writ and release from prison and from further postrelease control. Based on the foregoing, we grant the writ and order Hernandez's release from prison and postrelease control. Although Hernandez also requests attorney fees, he cites no authority for his entitlement to these fees, and the record does not contain sufficient evidence of bad faith on the part of Kelly, because the facts here are somewhat different from those in *Jordan* and *Woods*.

Writ granted<br>and petitioner released.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

———

John P. Parker, for petitioner.

Jim Petro, Attorney General, and M. Scott Criss, Assistant Attorney General, for respondent.